and Al, and we will begin with David McMullin for Velma Smith. Good morning, may it please the court. Your honors, thank you for the opportunity to be here today to address the court on some important issues. This case poses two significant issues that I'd like to focus on here today and rely otherwise on the briefing in the matter, and I'll try to be as conservative with my time and follow your honors' direction. The two questions that are most important in this case are number one, under Mississippi law or any law in any state, can insurers be liable for failure to promptly and reasonably acknowledge, investigate, and adjust a claim when an insurer provides a notice and follows the instructions of the insurer in just the manner the insurer instructs? The second major question is, under federal law and Mississippi law, can entities which are engaged in the business of insurance reasonably anticipate being held in a Mississippi courts or other state courts when they fail to promptly acknowledge, reasonably investigate, and adjust an insurer's claim? On this record, the answer to those questions is clearly yes. I'd like to give the court a quick . . . to reframe the issues. I'd like to reframe the facts for a moment. The issues in this case arise out of the sale of a certificate of insurance. Mrs. Smith was a cardholder with JCPenney . . . I mean, we've obviously read your brief, but she's been now paid what she was owed, right? That is correct, Your Honor. The claim in this case . . . And I'm a little unclear why . . . I understand you're saying it was a little late, but it wasn't like years late. It was a couple months late, in your view. Why would that lead to a class action, huge case, when she only was entitled to $650 and she got it, even if we assume arguendo that it was late? Your Honor, the claim in this case is one of delay of payment. Mississippi law is very clear. This court has acknowledged the separate claim in right of action for insurance under Broussard, for instance, for delay in payment is an actionable claim in and of itself. Your Honor, it's . . . Well, and I understand that, but typically that's a lot more money. And again, I'm not . . . I'm not saying that they shouldn't pay the $650 timely and all of that. I understand that argument, but I'm just a little curious why that has led to an oral argument before the Fifth Circuit. Your Honor, the case . . . the facts in this case represent and . . . exactly why class actions are essential in this country. The amount involved in this claim is, in fact, a small amount of money. The benefits that were ultimately paid were paid after a significant delay. Here, the facts were and are that only after Ms. Smith got involved with her lawyer and after the Department of Insurance made an inquiry, did the insurance company here, TransAmerica, finally locate and acknowledge the existence of this policy. Our investigation reflected that this was not an isolated incident. It was, in fact, a widespread problem. Pre-suit investigation, including looking at public records and records requests from various state insurance commissioners showed that TransAmerica had a widespread problem with delaying and failing to acknowledge the existence of an insurance claim. That is a significant problem that was, in and of itself, as Your Honor observes, partly actionable, not viably, not practically and economically on an individual basis. That is why the case was filed as a national class action and the alternative we filed for a Mississippi class or for an issues class. The relief that we're seeking here is certainly going to be determined after remand based upon the record that we see on the merits. I hope I've answered Your Honor's question on that issue. Back to the facts that drive this case are and what drove the district court's error here really are as follows. Ms. Smith was issued what's called a certificate of insurance. The chronology here is that in 2013, JCPenney solicited its court holders to sign up for this insurance. The policy that was issued was by TransAmerica to JCPenney. JCPenney is the policy holder itself. In turn, court holders that elected the coverage were issued certificates. In this instance, the only information that Ms. Smith had available to her concerning her policy coverage was by way of her insurance card reference to a policy number. The one that was provided to her was number 74A04Q2649. I'm going to refer to that for shorthand for purposes of this discussion as the 2649 number. That number was the only information that Ms. Smith had available to her when she had her loss, her covered loss in 2018. She observed that number on her card. She made inquiries using that card number which referred to that number as the policy number. That continued to be the case through the entire relevant timeline in which at every instance, every instruction given by the defendants was to refer to that as the policy number. The error that occurred in the district court was the district court misunderstood that the insured Ms. Smith had failed to follow those instructions. That was a clear error here. In fact, Ms. Smith followed the instructions by the defendants and ultimately only when she received the certificate of insurance itself months later, the policy itself, the certificate here, and let me correct myself, the certificate of insurance which gave instructions about how to give notice of the claim said that the insured should submit her name and the policy number itself, the certificate number itself. The confusion here is that the defendants referred throughout the timeline as this being the correct number that Ms. Smith should rely upon to make her claim. She did as exactly as she was instructed to do by the defendants. For the district court's error here was to say that she failed to follow the instructions and properly file her claim. That was just a simple plain factual error on the part of the district court. That alone supports the remand of the case on the issue of breach of contract and breach of implied duty of good faith and fair dealing. Those are the claims that are at the heart of this case. And that's what happened, Your Honors. I'll turn now to how was this a breach of contract? How was it a breach of good faith and fair dealing? It's very obvious here, and the law is well settled, the briefs do a good job of addressing these points, that here every contract in Mississippi and elsewhere carries with them an implied covenant of good faith and fair dealing. Here the fundamental problem was the insurers not only failed to cooperate, the insurers in fact thwarted the insurer's efforts to make a claim for months over months. And only upon the efforts of, dogged efforts by counsel and by the efforts of the Mississippi Department of Insurance was there any relief given. And most tellingly, at the time that ultimately when the insurers acknowledged this policy, they gave no explanation for what had happened. They were provided no new information. They were not triggered by some new information that they explained to the insurer that was the cause for this delay. None of that happened here. So what we have here is a significant delay in the policy payment and a significant delay in the adjusting of the claim that ultimately as Your Honor observes, the claim was paid but after a significant period of time. And again, this problem appears to be much more widespread than limited to Ms. Smith's claim alone. The other issue that was error on the part of the district court that warrants a reversal agreement is the court reached the conclusion that a third party beneficiary claim did not lie for Ms. Smith. The district court found that it was not clear to that court at least that the underlying contracts that were the part of the contracts between the insurance company Transamerica and the third party insurance adjuster administrator, TCS, it was quite clear, I thought at least, but the district court disagreed and found that it did not appear that Ms. Smith's interest would be the object of those contracts. The difficulty that we had in the lower court was we didn't have those contracts. So we had to plead based upon available public information and the record that we had. In this instance, the public record showed that Transamerica in 2018 had publicly announced that it had contracted third party claims administration to the TATA entities. Those include TCS eServe. The second basis for us to make the claim for the breach of third party beneficiary was that in the record itself, we had the response from TCS eServe which in response to the Department of Insurance from Mississippi inquiries acknowledged that they were the third party administrator. So in this instance, there was clear evidence at least that was available, the limited evidence we had available to us publicly and in the record of the case reflected that Transamerica had indeed engaged a third party to administer these claims. So Ms. Smith's claims were clearly implicated by and impacted by the administration of the claims by the third party. So for those reasons, we believe that Ms. Smith has clearly stated a third party breach of contract claim as well based on the record. As I said at the beginning of my opening here, the second major issue really is one of whether entities which engage in the business of insurance can reasonably be expected to be hailed into states wherein they engage in that business. The answer is yes. Here the district court disagreed and we believe was in error here. This is a 12B2 motion where this court of course reviews de novo that finding of fact and that conclusion. Here there were limited affidavits and declarations that were made by Ms. Smith. The truth of the matter was that the facts that were submitted by the declaration walked around those facts. Here the facts show that not only were OPCO meaningfully involved factually in the soliciting of the policy, but in addition the TAIC entity was meaningfully involved in the administration of the claim. Here these entities were clearly engaged in the business of insurance. Now this area has been, insurance of course is heavily regulated and that is by federal law been assigned primarily to the responsibility of states under the McCarran Act. The McCarran Act says very clearly the business of insurance and every person engaged therein shall be subject to the laws of the several states. Consistent with that, Mississippi law also reflects the same perspective. Mississippi law provides that all entities transacting business of insurance in Mississippi or insurance companies subject to the supervision of the commissioner, that's 8351. Here we also have a contract of insurance which by Mississippi law is deemed to be made in Mississippi. 8357 provides that all contracts of insurance on property, lives or interest in this state shall be deemed to be made herein or therein. So in this instance, the district court's finding and holding that it lacked general jurisdiction and specific jurisdiction was an error. We have got clear facts that show that OPCO was plainly involved in the administration or excuse me, the solicitation of the insurance policy itself. Now this court has said that plainly that the business of selling insurance policies is squarely within the business of insurance. That's the Perry case that was cited on page 32 of our brief. That is exactly what happened here. We have a fact that shows that J.C. Penney and OPCO were involved in soliciting the business of insurance by Ms. Smith and by the members of the purported class. So OPCO has clearly targeted its activities and entered into the business of insurance in Mississippi per McCarran, per Mississippi law. They are subject to those activities being regulated and being the subject of the and to address conduct that relates to those activities. Mr. McMillan, you're talking about what's in the record. Did your client proper any affidavits or any evidence regarding the jurisdictional facts in response to the 12b2 motion? Your Honor, the limited declarations that were submitted did not controvert the allegations of OPCO acting as in that capacity of soliciting insurance. So there was not any evidence to submit in opposition to those declarations. It was uncontroverted that OPCO was in fact soliciting and continues to solicit. In fact, as of today, OPCO still has the credit card statements and continues to issue those credit card statements, collect premiums from insurers. Now, what happens with those, we do not know. I will mention to Your Honors that in the time between the original filing of our original complaint and our amendment, there were discussions and discussions with counsel about getting all the contracts to be clear about who was doing what. That did not result in any cooperation on that front. What we got were the declarations. So to answer Your Honor's question, we did not submit any evidence or attempt to controvert the declarations because they didn't address the jurisdictional facts that we had alleged. Was the complaint sworn? The complaint was not sworn. So your client was relying solely on the allegations in the complaint? I'm sorry, I heard . . . Your client was relying solely on the allegations in the complaint? Correct. We relied upon the allegations in the complaint and in terms of the motion practice, we relied upon the evidence that was submitted in connection with the motion practice. That's correct, Your Honor. The evidence submitted by the other side? Correct. We relied on the evidence in that the allegations which included exhibits showing that OPCO was in fact involved in the solicitation of insurance, part of the complaint, the declarations did not address and challenge that allegation. So we rested upon the allegations in the amending complaint along with the exhibits that have been submitted. That is correct. And who had the burden to establish jurisdiction here? Your Honor, that's correct that we had a burden to show prima facie evidence to support personal jurisdiction here because the uncontroverted factual allegations concerning OPCO's business in Mississippi soliciting, collecting premiums were not addressed by the declarations. So there was nothing to controvert or to meet with counter-designations or counter-affidavits or declarations. Moreover, we had no information because that information was not available to us. That was not something that we had developed and of course we would develop that in the merits in discovery. If I've answered Your Honor's question, that's where we stood on the motion practice. But to remind the Court where we ended up, the allegations concerning OPCO's insertion of itself and engaging in the business of soliciting insurance was uncontroverted and it was not something that OPCO addressed in those declarations. If I've answered Your Honor's question. You have. With respect to the second portion of the jurisdictional question, in this instance, there's really no question here that TCS ESERV as a matter of the record on appeal, it shows clearly that they were in fact acting as the third party administrator in this case per Mississippi law, per federal law, by engaging in the business of administration of the claim. They're clearly subject to jurisdiction. The difficulty that our opposition's arguments present this Court with the conundrum that if federal law has given the responsibility to the states to regulate and address misconduct by insurers and this Court says there's not jurisdiction for the states to do that, it renders McKeren Act and it renders the Mississippi statutes ineffective and toothless as we described it in our briefing. That is the real problem here with their arguments. McKeren clearly has devolved and provided a reverse preemption that provides for states to be responsible for regulating insurance conduct. Here Ms. Smith and any other insurer in Mississippi really is going to be significantly impacted and precluded from getting meaningful relief in the case. They are forced to, for instance, go to Illinois where in this instance, TCS ESERV said to the Department of Insurance, we don't believe you've got jurisdiction here, you should come to Illinois. They showed their hand there on the jurisdictional issue in the discussions with Ms. Smith. That's the real problem here is they don't want to be subject to jurisdiction. The difference in this case is these defendants are sophisticated, they have significant resources, they have legal counsel, they have got compliance managers and the record shows, in fact, in this instance with Ms. Smith's claim, compliance managers were corresponding with the Department of Insurance, responding to the inquiries. They are certainly well aware of their responsibilities. If they avail themselves of the citizens of Mississippi's pocketbooks and they want to make do business in Mississippi, they know full well and can expect in all fairness to be held into court. That does not fly in the face of due process whatsoever. It is consistent with due process that if a business, especially in the case of insurers, which is a regulated, heavily regulated business, their expectation is reasonably to be expected to be held into courts in states where they are doing business. That is the issue. Counsel, I have a question about the parties. Aegon USA was not named in the operative complaint and you do not appear to be challenging Aegon DMS's reason for dismissal. Are they parties to this appeal or to this lawsuit? Aegon, Aegon NV is the parent company of Transamerica Insurance, Transamerica Corporation, which in turn is the parent of Transamerica Life Insurance. Aegon was dismissed without prejudice and they are not part of the appeal, Your Honor. Both Aegons? Aegon NV and Aegon are not the subject of the appeal for us. The issue really is focused on the issue of the Transamerica companies and the OPCO company here and the TATA entities. We refer to them collectively because there has been sort of a spaghetti or more of an alphabet soup problem of trying to identify which entity did what. That is where we ended up in the complaint. That is where we ended up in the appeal. Okay. Thank you. Your time has finished and you've saved time for rebuttal. We'll now hear from Michael Walgan for, I guess, Transamerica. Yes, that's correct. Why not, Aegon? May it please the Court, Your Honors. As Your Honors heard, there's really two issues here. There's a failure to state a claim issue. There's the personal jurisdiction issue. I'm going to be addressing the failure to state a claim. That's the issue that relates to the Transamerica and Aegon Direct companies that are still in this appeal. Now, Your Honors, this case really is a great example. It's almost a law school example of the Iqbal Twombly issue of what's expected in a complaint and what satisfies to state a claim. There's been a lot of argument about instructions that were given about using the policy number that was the policy issued to J.C. Penny, the policyholder, versus the certificate number. When you take a look at the allegations in this case, it's clear that there were never instructions that were given. That's not the plain reading and the reasonable reading of these allegations. There was a statement, a bank statement, that Ms. Smith, the plaintiff, was receiving every month documenting that there was premium being paid. There was a line item in that statement that referred to the Transamerica policy. It said it's the Plano, Texas, Transamerica Life office. It said a phone number, which is the customer service number. It said policy number 74A, etc. That's the certificate number. I'm just going to call that number 74A. If it comes up, there's some more digits to it, but for ease of reference. That's what was provided as a credit card statement on a J.C. Penny credit card every month. Separate from that, of course, is the contract. You have the policy and the insurance certificate that was issued by a Transamerica Life insurance company, and clear as day, there's really no dispute. When you look at the attachments to the complaint, there can be no dispute that there was the policy number provided to J.C. Penny, and there's a separate insurance certificate number. What's also not in dispute and clear from the policy is that there's defined instructions on how to submit a claim, and first and foremost, how to first supply written notice of a claim. That's also not in dispute and attached to the complaint, and that is a process by which you submit a written letter, a letter to include the name and certificate number as shown in the schedule of insurance, which again is in the contract, and that notice should be mailed to a PO box in Plano, Texas, and I want your honors to be careful because in the briefing, there was some miscitation of this very paragraph, and it's very clear the actual language specifies Plano, Texas. I believe in Appellant's brief, it omits that portion of it, and I think that's important because here, there was no correspondence ever sent in writing from the plaintiff to Plano, Texas, the office that was designated to receive notice of claim and to handle this claim. That never occurred, and there's no exhibits and no allegations that tend to show that that did occur. So under the policy, there was never written notice of the claim, and that contributes a lot to the allegations that we have here, which is that, and I want to direct your honors to paragraph 22 in the complaint, where it documents how this first came about, which is after an accident, an overnight hospital stay, Velma Smith attempted to provide notice of a claim online, and what was entered, and there's quotations, and it's important that we're true to the allegations, that read, Plaintiff made an initial attempt to make a claim under the group policy sometime, this is on information and belief, mind you, sometime on or before August 11, using Transamerica's website, when plaintiff entered, quote, group policy number 74A, et cetera, and her name, quote, Velma Smith, the responding message came back, quote, not recognized. Well, under the policy, that makes sense, because that wasn't the certificate number, or even the policy, excuse me, that wasn't the policy number 74A, it was the certificate number. And beyond that, the idea of there being a denial of the payment under all these allegations doesn't emerge again from the documents that we have in the exhibits. It says not recognized. It doesn't say your claim is denied, or you are not an insured. It just says not recognized. And the allegations don't really go further than that. There's a call that's referenced, a couple calls with the same circumstance, group policy number 74A, and then the response was not recognized. Well, again, that's not written notice of claim under the contract, and that's not a denial of the insured. And when you look at what transpires after that, over the course of the next two months, there's letters sent to Cedar Rapids, Iowa, in an attempt to get information on what to do. Cedar Rapids, Iowa, is not relevant to this policy or filing a claim. So there never really is the contractual back and forth in the claim process that really ever occurs until the department advised Transamerica that there's an insured trying to find out more information, and immediately this is dealt with expeditiously. Within five days, everything is provided, and the claim gets paid a month, within a month. The insured, Ms. Smith, is able to submit the proof of loss that is provided, the claim form is provided, gets it in within a month, and Transamerica pays within a couple weeks. None of that is contested or not borne out by the allegations in this case. So when we talk about the instructions that allegedly were not, I guess, were contradictory or followed allegedly by the plaintiff, it's not borne out by any reading of the complaint or its exhibits. So that really explains why the district court correctly dismissed the breach of contract claim. There's no provision of the policy that is breached, and there's nothing really that speaks to that on the plaintiff's side, certainly not in the amended complaint. And when we talk about bad faith, you know, there's really two problems. One problem is these allegations that I just mentioned don't demonstrate any intent or malicious conscious disregard of any kind, not under Iqbal Twombly. And beyond that is really if we take a step back and we think about what really happened here, you have an officer that's trying, understandably, to find out what to do to submit a claim. There is no Mississippi precedent that's addressing bad faith in that context. You haven't seen them cite a case that speaks to that aspect of the claim process where there needs to be, you know, this arguable basis doctrine that we see when it comes to delay or denial of an actual claim in the system that's being investigated. There's no Mississippi law that's addressing bad faith in this context. And of course, every contract has an implied duty of good faith and fair dealing. But that's an intentional standard. That's, again, malicious, gross negligence. The Sinek v. Murray case really crystallizes what that case is about. And I encourage your panel, this panel, to focus on that case because you'll see it is light years away from the allegations we actually have here. And finally, the idea of there being an implied duty to a third-party beneficiary from a TPA, a third-party administration agreement, where is that coming from? What allegations, what well-pled allegations are supporting that? We don't have any actual provisions of this agreement. All plaintiff or appellant is arguing is that there was a third-party beneficiary, a third-party administrator here. Okay, that doesn't follow that now insureds are direct intended beneficiaries that can actually assert a claim under that agreement. There is really no well-pled allegation that would ever justify that. And there's cases that plainly state that doesn't show the deal. So the point is, under Iqbal Twombly, none of this is borne out. There's a possibility of coming up with this scheme where the third party intends to delay claims intentionally, but none of that is plausible. That isn't the explanation that is the plausible reading of all that has been alleged here. If the judges have any questions for me, I'm happy to answer them. Aside from that, I think I've said my piece. Okay, thank you. Thank you. Turn to Haley Gregory representing OPCO. Thank you, Your Honors. Good morning. The district court, this court should affirm the district court's dismissal of OPCO for lack of personal jurisdiction for three reasons. OPCO is not subject to general jurisdiction in Mississippi because it is not at home in Mississippi. Second, Plaintiff's McCarran Act business of insurance argument fails because she waived that argument by failing to raise it in the district court below and because OPCO is not in the business of insurance. And third, OPCO is not subject to specific jurisdiction because this suit does not arise out of OPCO's act in Mississippi. Plaintiff had the burden to establish personal jurisdiction over OPCO. The district court rightly found that jurisdiction, general jurisdiction was not proper. General jurisdiction allows suits against an LLC regardless of subject matter but only in the state where the LLC is organized or has its principal place of business. Other than those two places, general jurisdiction can only be present under exceptional circumstances that are incredibly difficult to establish. I think you should discuss specific jurisdiction. We're well aware of the general jurisdiction limitations. Yes, Your Honor. Would the court also like me to . . . so part of the general jurisdiction argument was raised by the appellant on his initial presentation relative to the business of insurance and McCarran Act argument. Does the court want me to discuss that or move on just to specific jurisdiction? I think specific is sufficient to discuss but if my colleagues want to hear more about general, that's fine. Yes, Your Honor. The district court correctly decided that specific jurisdiction did not apply to OPCO. Specific jurisdiction is only proper when the suit arises out of or relates to the defendant's contacts with the forum and where exercise of jurisdiction, personal jurisdiction is fair and reasonable. The plaintiff argued that OPCO operates retail stores in Mississippi and that OPCO solicited her to purchase an insurance policy and manage her JCPenney credit card. The first allegation is not relevant to specific jurisdiction because plaintiff's claims do not arise out of OPCO's operation of retail stores in Mississippi. The second allegation is refuted by direct evidence from OPCO Secretary Wolverton. OPCO did not exist in 2013 when plaintiff purchased the insurance policy. It was not created until seven years later and it never assumed responsibility for providing insurance to the plaintiff or adjusting her claims. Plaintiff cannot dispute this and indeed, she did not even ask OPCO to pay her claims. In the 45 or so paragraphs that introduced the parties and explain the factual allegations that the plaintiff presented, she mentions OPCO three times. One relates to the purchase of assets and the JCPenney bankruptcy proceeding. One relates to the allegation that was refuted that OPCO issues and manages plaintiff's credit card where she pays her premiums. Then the third allegation is a conclusory allegation that by not recognizing the group number and by incorrect written requests for information, Transamerica and OPCO acted in a manner reflecting a pattern and practice used to avoid claims by JCPenney credit card holders. Beginning first with the allegation that OPCO issues and manages plaintiff's credit card where she pays her premiums. As discussed previously, OPCO refuted that by direct evidence from Secretary Wolverton that OPCO does not participate in insurance. It didn't sell the plaintiff her insurance policy. It didn't adjust her claim. It never touched Ms. Claim. Plaintiff did not refute that evidence with anything in the record. As I think Judge Ramirez asked the appellant's counsel in his oral argument presentation, the complaint is unsworn. They did not offer any evidence to refute the OPCO declaration. The district court adopted those factual findings which is reviewed at this court for clear error. Based on those facts, OPCO does not issue or manage the plaintiff's credit card. Finally, the last allegation and I think it's important to point out that it is paragraph number 44 in the plaintiff's complaint. It comes after dozens of factual allegations targeting specific defendants for certain conduct that happened in this case. OPCO is completely absent from all of those allegations and it appears in this final somewhat conclusory allegation about pattern and practice to deny certain claims. That is simply not borne out in the facts. OPCO did not engage in any activity directed to the forum that has given rise to Ms. Smith's claims and for that reason, this court should affirm the district court's dismissal for lack of personal jurisdiction of OPCO. Okay. Your time is up. Thank you. We'll now turn to Tom Julian for TCS. May it please the court. Tom Julian. I represent the TCS entities. I'm specifically addressing the dismissal of Tata American International Corporation, which I'll refer to as TAIC, which the district court correctly dismissed for lack of personal jurisdictions. Many of our arguments are the same as OPCO's and I'll try not to be repetitive on those. I do want to address a couple of points. First of all, like OPCO, our declaration is unrebutted. TAIC was incorporated and has its principal place of business in New York. It is not an insurance company or a third party administrator. It does not adjust insurance policies. It had, quote, no involvement in Ms. Smith's claim, including whether it was adjusted correctly or timely, whether it was paid correctly or timely. It had nothing to do with the issuance of the credit card in this case. These facts are unrebutted. Now, as to McCarran, I want to just briefly point out that the argument says to the McCarran Act, plaintiffs fail to cite any case ever holding that McCarran confers personal jurisdiction. There's no case out there that says that. McCarran obviously is intended to prevent federal preemption of state statutes regulating the business of insurance. There's no indication that it was meant to subject companies to jurisdiction in every state in which they operate. There's no indication that it was intended to override the due process protections of the Fourteenth Amendment. The United States Supreme Court in the case of BNSF Railroad versus Tyrell stated that the Fourteenth Amendment's due process constraint, quote, does not vary with the type of claim asserted or business enterprise pursued. That case, of course, dealt with railroads and FBLA, but the same analysis applies here. Regardless of whether we're dealing with insurance or railroads, the due process protections of the Fourteenth Amendment apply, which is why the district court correctly looked to the general jurisdiction analysis and the specific jurisdiction analysis. One thing that has not been addressed is the issue of consent jurisdiction, but I believe that's squarely addressed by our briefs in the Mississippi Supreme Court's opinion in K&C Logistics where the court held that Mississippi does not or it has rejected consent jurisdiction, meaning that merely by registering to do business in Mississippi, an entity does not thereby become subject to personal jurisdiction in that state. Going back one more point on McCarran, even if it did confer personal jurisdiction, again, the facts are undisputed that TAIC is not an insurance company. It does not adjust insurance claims. It's not a third-party administrator, and it's not registered with the Mississippi Insurance Department, so even if it conferred personal jurisdiction, which it does not, TAIC is not in the business of insurance. So the court correctly addressed general jurisdiction, which I won't get into, and specific jurisdiction. I would just say that as to specific jurisdiction, there are virtually no allegations specific to TAIC. The district court correctly said that the amended complaint contains, quote, only minimal reference to TAIC. There are no well-plaid factual allegations tying any conduct of TAIC to the state of Mississippi. So the court correctly determined that it does not have personal jurisdiction over TAIC. We ask that the district court's opinion in order dismissing TAIC be affirmed. As to my other clients, the two other TCS entities, and as to TAIC, if there were personal jurisdiction, we obviously join in the failure to state a claim arguments that have been addressed by Mr. Wolgan in this case. Thank you. Okay. Thank you. We'll turn to the rebuttal. Your Honors, what we've heard today is clear that neither OPCO nor TATA has offered any rebuttal to the allegations that OPCO was involved in the solicitation of the insurance with Mrs. Smith and other policyholders in Mississippi. Counsel opposite argued that there was no evidence of OPCO being involved. The allegations of the complaint, which were not challenged by the declarations, were that OPCO solicited Mrs. Smith in Mississippi, collected and continued to collect premiums from Mrs. Smith and other insurers in Mississippi to this day. With respect to the TATA entities, the allegations that TATA's improper computer servicing system, which were publicly discussed, were part of the allegations of the complaint. Likewise, those declarations did not address those allegations. Under Iqbal and Twombly, those allegations had to be taken as true and they were plausible based on the record that we've got. Based on the record we have, it's clear that the allegations that these defendants were engaged in the business of insurance in Mississippi was, as alleged, uncontroverted. So, OPCO and the TATA entities rightfully belong in this case. On the issue of the breach, again, the claim in this case is not one of denial of payment. The claim is one of delay of payment. Counsel for Transamerica did not address that issue. The suggestion that Mrs. Smith did something wrong is not borne out by the evidence. The case is entirely as instructed. She used the one piece of information that she had been provided and that for a period of months over months, she was unable to even process or make a notice of claim based upon the instructions of the defendants. There's no suggestion that Mrs. Smith failed in any respect to follow procedure in the way that the district court suggested. So, for the reasons that we've set forth in our briefing, we believe that the court clearly should reverse and remand on the issue of breach of contract and breach of implied duty of good faith and fair dealing. We believe likewise that we've shown that there is substantial specific jurisdictional facts that were uncontroverted showing that OPCO and the TATA entities were substantially involved in the administration solicitation of business and the insurance business in Mississippi in this case. Subjecting them to federal Mississippi law and consistent with the Constitution. We ask the court reverse and remand. Okay. Thank you. We appreciate everyone's arguments. We're going to take a short break before the last argument. Five minutes.